UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
AMRA SABIC-EL-RAYESS, :
:
                      Plaintiff, :       24-CV-2891 (JMF)
:
      -v- :       OPINION AND ORDER
:
TEACHERS COLLEGE, COLUMBIA UNIVERSITY, :
:
                      Defendant. :
:
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Dr. Amra Sabic-El-Rayess is a Muslim immigrant from Bosnia who, at the time this suit was filed, was forty-eight years old. She has been a non-tenure-track faculty member at Teachers College, Columbia University, for over a decade. In this case, she brings claims against Teachers College for religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code 8-101 *et seq.*; age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the NYCHRL; and retaliation under Title VII, the ADEA, and the NYCHRL. Her core allegation is that Teachers College has rejected her efforts, over many years, to obtain a tenured or tenure-track position because of her Muslim faith, her age, and her complaints about discrimination on those bases. Teachers College now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Dr. Sabic-El-Rayess's claims. For the reasons that follow, the motion is GRANTED as to her claims of age discrimination but otherwise DENIED.

## BACKGROUND

The following facts, drawn from the Second Amended Complaint (the "Complaint"), ECF No. 26 ("SAC"), are assumed to be true for purposes of this motion and construed in the light most favorable to Dr. Sabic-El-Rayess. *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).

Dr. Sabic-El-Rayess is a forty-eight-year-old Muslim woman who immigrated to the United States from her native Bosnia as a young adult. SAC ¶ 5. She is a member of the faculty of Teachers College, Columbia University, which is the oldest and largest graduate school of education in the United States. *Id.* ¶ 1. For over a decade, Dr. Sabic-El-Rayess has worked as a non-tenure-track Associate Professor of Practice, Research Professor, Research Scientist, and Lecturer at Teachers College, where she teaches, researches, and publishes on a range of issues, including educational displacement, hate prevention, and storytelling. *Id.* ¶ 9. During her time at Teachers College, she has, among other things, secured multi-million-dollar grants to conduct cutting-edge research, published a best-selling and critically acclaimed memoir and many peer-reviewed articles, spearheaded the creation of a research laboratory, and served in multiple leadership positions. *Id.* ¶¶ 10-11, 52-57. But she has not been awarded tenure.

Tenure-track and tenured appointments confer a number of benefits over non-tenure-track roles, from greater monetary compensation to more robust job security and research opportunities. *Id.* ¶¶ 15-19. At Teachers College, there are two methods by which a tenure-track or tenured professor can be hired: Permission to Recruit ("PTR") and Target of Opportunity ("TOO"). *Id.* ¶ 59. The former is purportedly open to all applicants, while the latter allows Teachers College to target and hire specific individuals. *Id.* ¶ 60. Over the years, Teachers College leaders — including its President, Thomas Bailey — have agreed that Dr. Sabic-El-

Rayess is qualified for a tenure-track role, but Teachers College has nevertheless repeatedly rejected her applications for such positions. *Id.* ¶¶ 13-14. Dr. Sabic-El-Rayess formally applied for tenure-track positions through the PTR route twice — once in Fall 2012 and one in Fall 2013 — but was unsuccessful both times. *Id.* ¶¶ 63-64. She has also continuously pursued tenure-track positions through the TOO route until as recently as this year, but to no avail. *Id.* ¶ 65.

In December 2012, while her first application for a PTR position was pending, Dr. Sabic-El-Rayess learned from a colleague that Professor Aaron Pallas — a member of Teachers College's Hiring Committee at the time — had been asking about her Muslim background, including whether she was an observant Muslim, in response to which she confirmed that she was indeed Muslim. *Id.* ¶¶ 67-68. She did not receive the PTR position, which was awarded instead to a non-Muslim candidate who, Dr. Sabic-El-Rayess alleges, was an inferior educator. *Id.* ¶¶ 69-73. After applying unsuccessfully for another PTR position the following year, Dr. Sabic-El-Rayess met with Professor Gita Steiner-Khamsi — then the International and Transcultural Studies ("ITS") Department Chair — to seek guidance about securing a tenure-track position in the future. *Id.* ¶¶ 74-77. The Complaint alleges that Steiner-Khamsi responded by conveying that Dr. Sabic-El-Rayess's Muslim background doomed her chances of ever obtaining tenure. *Id.* ¶ 78. During Dr. Sabic-El-Rayess's tenure at Teachers College, at least two non-Muslim professors have been promoted to tenure-track positions: Professor Mary Mendenhall, who was appointed to a tenure-track position in the ITS department in 2021 through the PTR process; and Professor Pamela Ann Koch, who was promoted (though through which process the Complaint does not say) to a tenure-track position the same year. *Id.* ¶¶ 82-93.

In January 2021, Dr. Sabic-El-Rayess expressed interest in a PTR position within Teachers College's Adult Learning & Leadership ("ALL") Program in the Organization and

Leadership ("O&L") Department to ALL Director Professor Victoria Marsick. *Id.* ¶¶ 94-95. Marsick initially seemed receptive, and Dr. Sabic-El-Rayess transferred into the O&L Department in January 2022 based on assurances from Marsick that there would be a tenure-track opportunity available to her there. *Id.* ¶¶ 96-100. In September 2022, however, during a conversation about Dr. Sabic-El-Rayess's upcoming bid for the PTR position, Marsick told Dr. Sabic-El-Rayess that she was "not a spring chicken" and that Marsick preferred to hire someone with "youth" and "energy." *Id.* ¶ 102. When Dr. Sabic-El-Rayess told a colleague about these remarks, the colleague confirmed that Marsick's ideal candidate for the position was someone younger. *Id.* ¶¶ 103-04. Based on these remarks (and Steiner-Khamsi's earlier comments about her Muslim background dooming her chances of a tenure-track position), Dr. Sabic-El-Rayess concluded that applying for the PTR position would be futile, and the position was ultimately offered to Dr. Rajashi Ghosh, a non-Muslim candidate who — "[u]pon information and belief" — is younger than Dr. Sabic-El-Rayess. *Id.* ¶¶ 105-07.

More broadly, Dr. Sabic-El-Rayess alleges that there exists a broader culture of anti-Muslim bias at Teachers College and that various members of Teachers College's leadership have contributed to that culture. *Id.* ¶¶ 108-30. Over the years, she repeatedly complained to various Teachers College colleagues and administrators about her experiences, but her complaints went unaddressed. *Id.* ¶¶ 131-42. She continued pursuing a promotion by way of a TOO position, including in conversations with Teachers College President Thomas Bailey and then-Provost Stephanie Rowley, but her efforts remained unsuccessful. *Id.* ¶¶ 143-51. In or around February 2023, President Bailey reached out to Dr. Sabic-El-Rayess about increasing her annual regular wages by nearly $30,000 and conveyed that the increase would be instituted retroactively as of September 2022, advising her to speak with then-Interim Provost William

4

Baldwin to discuss the regular wage increase. *Id.* ¶¶ 154-55. She did so, in which conversation she continued to press her interest in a TOO position and brought up the alleged discrimination she had experienced — a topic he was reluctant to discuss. *Id.* ¶¶ 156-62. After Dr. Sabic-El-Rayess followed up by email, Baldwin responded in late March 2023 that he was "wrestling" with how to respond to her complaints of discrimination" but then never responded to subsequent emails. *Id.* ¶¶ 163-65, 170-82. On April 17, 2023, Dr. Sabic-El-Rayess emailed Teachers College's Title IX Coordinator to complain of anti-Muslim discrimination. *Id.* ¶¶ 166-68. After her complaints to Baldwin, Teachers College halted all conversations with her about a regular wage increase. *Id.* ¶¶ 173-74. Indeed, while the Complaint does not make the chronology plain, it alleges that Teachers College *reduced* Dr. Sabic-El-Rayess's regular wages between 2022 and 2023 by nearly $10,000. *Id.* ¶¶ 175-78.

On June 21, 2023, Dr. Sabic-El-Rayess sent Teachers College a letter detailing her discrimination claims, in which she asserted that the school had discriminated against her based on her religion and age in violation of Title VII, the ADEA, and the NYCHRL. *Id.* ¶¶ 179-80. On or about November 7, 2023, Marsick emailed her on behalf of Teachers College requesting that she apply to be reappointed into a non-tenure-track role as an Associate Professor of Practice and assemble a dossier as part of that application. *Id.* ¶ 183. She had never been asked to compile a dossier in order to remain in her non-tenure-track role before, and on November 21, 2023, she sent Teachers College a letter objecting to the proposed reappointment process, *id.* ¶¶ 184-85, in which she reiterated her complaint that she had been relegated to a non-tenure-track position due to discrimination, *id.* ¶ 186.

On January 9, 2024, Teachers College told Dr. Sabic-El-Rayess that it would not agree to place her on any sort of expedited path toward tenure consideration, explaining that it was

5

prepared only to offer her a five-year reappointment to a non-tenure-track Associate Professor of Practice position. *Id.* ¶¶ 187-89. Teachers College's purported rationale was that Dr. Sabic-El-Rayess did not have any peer-reviewed publications, *id.* ¶ 190, even though she had many such publications, including eight in which she is identified as the sole author, *id.* ¶¶ 190-92, and Teachers College was aware of her publications by virtue of her having shared her curriculum vitae with various administrators, *id.* ¶¶ 193-98. Dr. Sabic-El-Rayess alleges that other, non-Muslim faculty have been appointed to tenure-track or tenured positions at Teachers College with fewer peer-reviewed publications and, "upon information and belief," that tenure at Teachers College typically requires only that an applicant have around five or six peer-reviewed publications. *Id.* ¶¶ 199-201. She emailed Teachers College that she had in fact authored many peer-reviewed publications, but Teachers College never responded, and has never articulated any specific reason to justify rejecting Dr. Sabic-El-Rayess's efforts to be promoted to a tenure-track position. *Id.* ¶¶ 202-04. Teachers College Provost KerryAnn O'Meara reaffirmed on March 11, 2024, that Teachers College was not offering tenure-track or tenured status to Dr. Sabic-El-Rayess. *Id.* ¶¶ 207-08. Dr. Sabic-El-Rayess also alleges that Teachers College retaliated in April 2024 by revoking an invitation to participate in a symposium and failing to timely request reimbursement of approximately $170,000 in connection with a grant she had received. *See id.* ¶¶ 209-34. Dr. Sabic-El-Rayess alleges that she has incurred economic, emotional, physical, and reputational damages as a result of Teachers College's conduct. *Id.* ¶¶ 235-46.

On January 31, 2024, Dr. Sabic-El-Rayess filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 40. The EEOC issued a Right to Sue Notice dated February 5, 2024. *Id.* Dr. Sabic-El-Rayess filed this action on April 17, 2024, bringing claims for religious discrimination under Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code 8-101 *et seq.*; claims for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the NYCHRL; and claims for retaliation under Title VII, the ADEA, and the NYCHRL.

## LEGAL STANDARDS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018). A court will not dismiss any claims unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) — that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570. Where, as here, a plaintiff brings claims of employment discrimination, however, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

Dr. Sabic-El-Rayess brings three sets of claims: claims for religious discrimination under Title VII and the NYCHRL, claims for age discrimination under the ADEA and the NYCHRL, and claims for retaliation under Title VII, the ADEA, and the NYCHRL.

As a preliminary matter, Teachers College argues that "Plaintiff's NYCHRL claims must be dismissed because these claims . . . can only be brought pursuant to an Article 78 proceeding [pursuant to Article 78 of New York's CPLR], which is now time-barred." ECF No. 32 ("Def.'s Mem."), at 7-8. It is true that "a university faculty member's 'claims based upon the rights or procedures found in college manuals, bylaws and handbooks may only be reviewed by way of a special proceeding under Article 78.'" *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (summary order) (quoting *Bickerstaff v. Vassar Coll.*, 354 F. Supp. 2d 276, 283 (S.D.N.Y. 2004)). But "Article 78 is not the exclusive remedy for all relief sought against a college." *Koul v. Univ. of Rochester*, 285 F. Supp. 3d 595, 602 (W.D.N.Y. 2018) (internal quotation marks omitted). Challenges to an "institution of higher education['s] . . . *administrative* and *academic* determinations" may only be brought in an Article 78 proceeding; challenges of other stripes may be brought in a "plenary action." *See Puentes v. Union Coll.*, No. 23-CV-373 (LEK), 2024 WL 1328914, at *6 (N.D.N.Y. Mar. 28, 2024) (internal quotation marks omitted and emphasis added).

In short, while "in some circumstances, a denial of tenure may be the subject [only] of an Article 78 proceeding," *Romer v. Bd. of Trs. of Hobart & William Smith Colls.*, 842 F. Supp. 703, 707 (W.D.N.Y. 1994), that is not always the case. And it is not the case here. Dr. Sabic-El-Rayess does not allege that she is entitled to tenure under the "rights or procedures found in college manuals, bylaws and handbooks" of Teachers College. *Cf. Byerly v. Ithaca Coll.*, 290 F.

Supp. 2d 301, 305 (N.D.N.Y. 2003). Nor does she allege that Teachers College's discriminatory and retaliatory acts were "directly related to [] academic or disciplinary determinations . . . , or to the procedures followed in reaching those determinations." *Kickertz v. New York Univ.*, 110 A.D. 3d 268, 278 (1st Dep't 2013). Instead, the gravamen of her claim is that she was denied particular jobs (namely, tenure-track positions) for discriminatory or retaliatory reasons. *See id.* ("[W]here the causes of action against a college or university . . . relate to nonacademic matters, they are not limited to article 78 review."). Thus, the Court rejects Teachers College's contention that Dr. Sabic-El-Rayess's NYCHRL claims are limited to an Article 78 proceeding and, by extension, time-barred.

With that, the Court will turn to each set of Dr. Sabic-El-Rayess's claims in turn.

**A. Disparate Treatment Claims**

Dr. Sabic-El-Rayess brings claims for discrimination on the basis of religion and age under Title VII, the ADEA, and the NYCHRL. Claims under these provisions are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Watson v. Geithner*, No. 11-CV-9527 (AJN), 2013 WL 5441748, at *4 (S.D.N.Y. Sept. 27, 2013). At the motion-to-dismiss stage, only the first step of this framework — the plaintiff's burden to allege a *prima facie* case of discrimination — is at issue. *See Littlejohn*, 795 F.3d at 311. To establish a *prima facie* case under Title VII and the ADEA, a plaintiff must show that: (1) she was a member of a protected class; (2) she was competent to perform the job in question or was performing the duties satisfactorily; (3) she suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination. *See, e.g.*, *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 155 n.4 (S.D.N.Y. 2022). For NYCHRL claims, a plaintiff must allege the same, except

9

that the adverse action need not be "material"; instead, a plaintiff need only demonstrate differential treatment that is "more than trivial, insubstantial, or petty." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (quoting *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011)). Thus, a NYCHRL plaintiff must still allege facts supporting an inference of discrimination. *See Williams*, 836 F. Supp. 2d at 177. Indeed, to survive a motion to dismiss claims under Title VII, the ADEA, and the NYCHRL, the facts alleged must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. "[T]he burden of establishing a prima facie case is 'minimal.'" *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

### 1. Age Discrimination

Dr. Sabic-El-Rayess's age discrimination claims fail to meet these standards. Significantly, the only specific factual allegations in the Complaint that relates to her age are the statements Marsick made in September 2022, when Dr. Sabic-El-Rayess was considering applying to fill a PTR position, that she was "not a spring chicken" and that Marsick preferred to hire someone "young" who had "youth" and "energy." SAC ¶ 102. But it is undisputed that Dr. Sabic-El-Rayess *never applied* for the position at issue. *Id.* ¶¶ 101-05. That is fatal to any claim of age discrimination claim because, "[t]o succeed on a discriminatory failure to promote claim, a plaintiff must ordinarily actually apply for the promotion or position." *Fox v. Cnty. of Yates*, 657 F. App'x 60, 63 (2d Cir. 2016) (summary order) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709-10 (2d Cir. 1998)). As the Second Circuit has explained, "[t]his general mandate ensures that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer." *Brown*, 163 F.3d at 710. It also

"ensures that the fact finder is not left to speculate as to the qualifications of the competing candidates, the damages to be derived from the salary of unknown jobs, the availability of alternative positions, the plaintiff's willingness to serve in them (e.g., in other locales or on other shifts), etc." and "protects employers from the unfair burden of having 'to keep track of all employees who have generally expressed an interest in promotion.'" *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004) (quoting *Brown*, 163 F.3d at 710).

Citing *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993), and *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1016 (2d Cir. 1980), Dr. Sabic-El-Rayess contends she "did not need to formally apply for this PTR in order to challenge her rejection" because any application would have been futile. ECF No. 34 ("Pl.'s Opp'n"), at 13-14; *see* SAC ¶¶ 14, 105. The *Malarkey* court did observe that a "failure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor." 983 F.2d at 1213. In more recent cases, however, the Circuit has made clear that the "futility exception" to the application requirement "is narrow and does not pertain simply because an employee asserts that an 'aura of discrimination' in the workplace somehow discouraged her from filing a formal application. Rather, to be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino*, 385 F.3d at 227 (quoting and citing *Brown*, 163 F.3d at 710 & n.2). Dr. Sabic-El-Rayess does not allege

11

facts to fall within this "narrow" exception. And in any event, Marsick's single alleged remark is not enough to demonstrate that applying for the PTR would have been a futile endeavor.[1]

Accordingly, Dr. Sabic-El-Rayess's age discrimination claims must be and are dismissed.

### 2. Religious Discrimination

By contrast, the Court concludes that Dr. Sabic-El-Rayess's allegations are sufficient to state claims of discrimination on the basis of religion. In arguing otherwise, Teachers College contends first that Dr. Sabic-El-Rayess fails to allege a materially adverse employment action. *See* Def.'s Mem. 16-20. But that is not required for her NYCHRL claim and, in any event, she does. First and foremost, she alleges that she "continuously pursued tenure-track positions through the TOO route until as recently as 2024," SAC ¶ 65, and that her requests for such a position were "reject[ed]" in meetings on January 9, 2024, and March 11, 2024, *see id.* ¶¶ 188-89, 207-08. Teachers College suggests that these requests were not actual applications, *see* ECF No. 35 ("Def.'s Reply"), at 6 (asserting that "Plaintiff does not allege that she applied for a tenure-track position since 2013"), but that is not apparent from the face of the Complaint, especially given the distinction between the PTR and TOO processes.

In any event, Dr. Sabic-El-Rayess alleges other materially adverse employment actions. Most notably, she alleges that Teachers College reduced her regular wages in 2023 (despite previously suggesting that it would increase her regular wages). *See* SAC ¶¶ 26, 170-78, 236. Relying on Dr. Sabic-El-Rayess's W2s, Teachers College challenges this allegation. *See* Def.'s Mem. 18, 23. But that is a factual dispute that cannot be resolved here, as the Court may not

---

[1] In asserting that applying for the PTR position would have been futile, Dr. Sabic-El-Rayess also cites Steiner-Khamsi's alleged comment that she would never receive sufficient support for tenure at Teachers College "because of her Muslim identity." SAC ¶ 105; *see also id.* ¶ 79. But that comment occurred nearly a decade earlier and, thus, is far too attenuated to support application of the futility exception to the application requirement.

consider the W2s in this posture because, contrary to Teachers College's assertions, they are neither incorporated into, nor integral to, the Complaint. *See ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014); *see also* Pl.'s Opp'n 23-24. And additionally, Dr. Sabic-El-Rayess alleges that Teachers College disinvited and excluded her from a prominent speaking role at a symposium and failed to timely request reimbursement of approximately $170,000 in connection with a grant she had received. *See* SAC ¶¶ 209-34. Teachers College contends that revoking Dr. Sabic-El-Rayess's invitation to participate in the symposium does not constitute a *materially* adverse employment action, *see* Def.'s Mem. 18-19, but that is not necessarily so in light of the Supreme Court's recent clarification that a plaintiff need not show that adverse action "was significant[,]" "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar[]" to prevail on a Title VII claim. *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024) (internal quotation marks omitted); *see also, e.g.*, *Leget v. Henderson*, Nos. 99-CV-3636 (DLC) et al., 2001 WL 43615, at *5 n.9 (S.D.N.Y. Jan. 18, 2001) (observing that the standard for what qualifies as an adverse action is the same under Title VII and the ADEA).

In the alternative, Teachers College argues that Dr. Sabic-El-Rayess fails to allege any facts sufficient to support an inference of discrimination. *See* Def.'s Mem. 20-21. But drawing all inferences in her favor, the Court once again disagrees. Among other things, a factfinder could infer that Teachers College's rationale for revoking Dr. Sabic-El-Rayess's invitation to speak at the symposium — that her participation would somehow make the "space" less "safe" — drew on Islamophobic stereotypes. *See* SAC ¶¶ 216-21; *see also, e.g.*, *Bergesen v. Manhattanville College*, No. 20-CV-3689 (KMK), 2021 WL 3115170, at *6 (S.D.N.Y. July 20, 2021) ("The presence of stereotyping may support the inference that an adverse action was due

13

to a protected characteristic."). In addition, the Complaint alleges (albeit admittedly somewhat conclusorily) that no Muslim has ever received a tenure-track or tenured position at Teachers College despite many qualified Muslim applicants, *see* SAC ¶ 110; and that leaders of Teachers College have made remarks that could be construed as anti-Muslim and disparaged academic pursuits involving Islam, *see id.* ¶¶ 113-29. These allegations, combined with Teachers College's purportedly unprecedented request that Dr. Sabic-El-Rayess compile a dossier in connection with her application for reappointment to a non-tenure-track position, *see id.* ¶¶ 183-85, and its arguably false rationale — a lack of peer-reviewed publications — for its refusal in January 2024 to place Dr. Sabic-El-Rayess on any sort of expedited path toward tenure consideration, *see id.* ¶¶ 190-204, are enough to survive a motion to dismiss. *See, e.g., Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (observing that a jury may draw "reasonable inference[s]" from "the proffer of a false reason" for an adverse employment action, including "the required ultimate finding of discrimination"); *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 313 (2d Cir. 1997) ("Departures from procedural regularity . . . can raise a question as to the good faith of the process where the departure may reasonably affect the decision." (cleaned up)).[2]

In short, Dr. Sabic-El-Rayess's religious discrimination claims survive.

## B. Retaliation Claims

Finally, although it is a close call, the Court concludes that Dr. Sabic-El-Rayess's retaliation claims under Title VII, the ADEA, and the NYCHRL survive as well. To state a

---

[2] The parties dispute whether and to what extent the Court can consider conduct outside the statute of limitations, including, for example, Steiner-Khamsi's alleged statement in 2014 that Dr. Sabic-El-Rayess's Muslim background doomed her chances of obtaining tenure. *See* SAC ¶¶ 66-68, 75-79; *compare* Def.'s Mem. 10-12, *with* Pl.'s Opp'n 12-13, 20-21. The Court need not and does not resolve that dispute here.

claim of retaliation, a plaintiff must "give plausible support to the reduced *prima facie* requirements" of "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Febrianti v. Starwood Worldwide*, No. 15-CV-635 (JMF), 2016 WL 502027, at *3 (S.D.N.Y. Feb. 8, 2016) (quoting *Littlejohn*, 795 F.3d at 315, 318). "[T]he harm element of a retaliation claim is not to be analyzed in the same way as the harm from an alleged substantive act of discrimination." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019). "Instead, the proper question for a retaliation claim is whether the alleged adverse action to which the plaintiff was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination. *Id.* (internal quotation marks and alterations omitted). In addition, to state a claim, a plaintiff must allege that "retaliation was a 'but-for' cause of the employer's adverse action[s]." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

      Dr. Sabic-El-Rayess's retaliation claims meet these standards. For example, she alleges that the January and March 2024 rejections of her requests for a tenure-track or tenured positions occurred within months of her complaints about religious discrimination. *See* SAC ¶¶ 179-208. She further alleges that President Bailey reached out to her in February 2023 about increasing her annual regular wages by nearly $30,000, retroactive to September 2022, but that after she followed up with then-Interim Provost about that increase (as directed) *and* relayed her complaints of anti-Muslim discrimination over the subsequent months, Teachers College actually reduced her regular wages. *See id.* ¶¶ 154-78. And she alleges that the revocation of her invitation to speak at the symposium occurred just a week after she filed her original Complaint in this action and five days after counsel for Teachers College entered notices of appearance, *id.*

15

¶¶ 209-15, and that Teachers College failed to meet a deadline at the end of that same month to request reimbursement of about $170,000 in connection with a grant she received, despite having never missed such deadlines in the past, *id.* ¶¶ 224-34. "[A]ccepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff," *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018), the Court finds these allegations are sufficient to plausibly allege retaliation claims under Title VII, the ADEA, and the NYCHRL.

## CONCLUSION

For the foregoing reasons, Teachers College's motion to dismiss is GRANTED with respect to Dr. Sabic-El-Rayess's age discrimination claims but otherwise DENIED.

The Court declines to grant her leave to amend her Complaint to revive the age discrimination claims. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 14-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted). Here, the problem with Dr. Sabic-El-Rayess's age discrimination claims — the fact that she did not apply for the relevant position — is substantive, so amendment would be futile. In addition, she does not request leave to amend that claim or suggest that she is in possession of facts that would cure the problems with her age discrimination claims. *See, e.g.*, *Clerk v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).[3] Finally, the Court granted Dr. Sabic-El-Rayess leave to amend her already-once-amended complaint in response to Teachers College's

---

[3] While Teachers College's motion to dismiss was pending, Dr. Sabic-El-Rayess filed a motion for leave to file a Third Amended Complaint, but the proposed amendments pertained only to her retaliation claims. *See* ECF No. 36. The Court denied the motion for leave to amend without prejudice to renewal within two weeks of its ruling on the motion to dismiss — i.e., this Opinion and Order. *See* ECF No. 37.

original motion to dismiss and explicitly warned that she would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  ECF No. 23; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*.").

Unless and until the Court orders otherwise, Teachers College shall — in light of the holidays — answer the remaining claims **within four weeks of the date of this Opinion and Order**.  In addition, the initial pretrial conference is hereby reinstated and ADJOURNED to **January 14, 2025**, at **9:00 a.m.**  The conference will be held remotely in accordance with the Court's Individual Rules and Practices in Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman.  To join the conference, counsel (and members of the public or press) should call the Court's **new** dedicated conference call line at (855) 244-8681 and use access code 2303 019 3884, followed by the pound (#) key; when prompted for an attendee ID number, those joining should press the pound (#) key again.  The parties are reminded that, **no later than the Thursday before the initial pretrial conference**, they are required to submit a joint status letter and proposed Case Management Plan.  *See* ECF No. 8.

The Clerk of Court is directed to terminate ECF No. 30.

SO ORDERED.

Dated: December 5, 2024
       New York, New York

_____
JESSE M. FURMAN
United States District Judge