UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION

| | |
|---|---|
| DR. AMRA SABIC-EL-RAYESS,<br><br>    *Plaintiff*,<br><br>v.<br><br>TEACHERS COLLEGE, COLUMBIA UNIVERSITY,<br><br>    *Defendant.* | Case No. 1:24-cv-02891-JMF |

**STIPULATION AND [PROPOSED] ORDER REGARDING
PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")**

Dr. Amra Sabic-El-Rayess ("Plaintiff") and Teachers College, Columbia University ("Defendant") (each, a "Party" and collectively, the "Parties"), by and through their undersigned counsel, STIPULATE AND AGREE to the following Order for the production of Electronically Stored Information ("ESI") in the above-captioned matter (hereinafter, "this Order").

**I. GENERAL**

1. This Order shall govern the discovery of Electronically Stored Information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), the Local Rules of the United States District Court for the Southern District of New York, and any other applicable orders and rules.

2. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the action.

3. Nothing in this Order shall supersede the provisions of any applicable Protective Order in this case (hereinafter, "the Protective Order").

4. This Order applies to any third-party discovery, pursuant to Fed. R. Civ. P. 45, if

agreed to by the subpoena recipient. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Fed. R. Civ. P. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

5. In the event of remand or transfer to other courts, this Order will remain in effect in all respects, until adopted by the remand or transferee court or replaced by a successor order.

6. Nothing in this Order shall be deemed to constitute a waiver of any objections a producing Party may have with respect to any discovery request.

7. Subject to the Parties' objections and responses to requests for production of Documents, all non-privileged ESI Documents that are identified as responsive to discovery requests shall be produced in the manner provided herein and consistent with the Protective Order.

## II. DEFINITIONS

1. "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34. The term "Document" shall include hard-Copy Documents, Electronic Documents, and ESI as defined herein.

2. "**Electronic Document or Data**" mean a Document or Data existing in electronic form at the time of collection, including but not limited to email or other means of electronic communications, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, PowerPoint slides), spreadsheets (*e.g.*, Excel), and image files (*e.g.*, PDF and .JPG).

3. "**Electronically Stored Information**" or "**ESI**" as used herein has the same meaning as in Fed. R. Civ. P. 26 and 34.

4. "**Hard-Copy Document**" means a Document existing in paper form at the time of collection.

5. "**Native Format**" means and refers to the format of ESI in which it was created, maintained, generated, and/or used by the producing Party in the usual course of the Party's business and the Party's regularly conducted activities.

6. "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or, (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

7. "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

8. "**Optical Character Recognition**" or "**OCR**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

9. "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms are known as MD5 and SHA-1.

10. "**Confidentiality Designation**" means the legend affixed to Documents for confidential discovery information as defined by, and subject to, the terms of the Protective Order.

11. "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

12. "**Load File**" means an electronic file provided with a production set of document images that facilitate the loading of such information into a receiving Party's document review platform, and the correlation of such data in the platform.

13. "**Unitization**" means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as Documents, including

attachments, and where each Document begins and ends.

### III. DATA SOURCES AND CULLING CRITERIA

1. **Email Threading**: The Parties agree that they may use email threading to narrow the universe of documents for review. Where the most inclusive email—*i.e.*, the latest email in a chain—is responsive and non-privileged, the Parties may elect to produce only the most inclusive email. However, where the most inclusive email contains only privileged or non-responsive information, the Parties may also elect to produce the latest email in the chain that contains all of the responsive, non-privileged information from the chain. This Order does not change the Parties' obligation to produce responsive, non-privileged "branches" of an email chain that (1) are not included in the most inclusive email or (2) contain at least one attachment that is different than the attachment(s) to the most inclusive email. This Order also does not change the Parties' obligation to produce a reasonable number of threaded emails separately, upon request.

2. **Technology Assisted Review**: No Party may use technology assisted review, machine learning, or analytics tools to cull the document universe, without the other Party's written consent.

3. **Proprietary Software**: To the extent that native files are produced that require proprietary software for access and review, the producing Party shall make reasonable efforts to supply the receiving Party with a copy of such software to allow the receiving Party to review the files or make such files available for review in an alternative format.

4. **Password Protected Files**: The Parties agree to utilize commercially reasonable efforts to open password-protected or encrypted files, including commercially accessible software, when appropriate and feasible.

5. **System Files**: The Parties may exclude system-generated files and folders that are not likely to contain user-created files from their review (*e.g.*, by DeNISTing).

6. **De-Duplication Across Custodians**: A Party is only required to produce a single copy of a responsive Document, and a Party shall make reasonable efforts to de-duplicate

responsive Electronic Documents and ESI (based on MD5 or SHA-1 Hash Values at the document level) across custodians. The fields upon which the Hash Value of emails are calculated shall be disclosed by the producing Party. The producing Party will provide a Duplicate Custodian field in the production Load File sufficient for the receiving Party to identify each custodian of a particular document that was eliminated through de-duplication as well as the file path in which the document was kept in the ordinary course in the duplicate custodian's files. If all recipient custodians are documented for removed documents in the Duplicate Custodian field, the producing Party need only produce a single copy of the particular document; however, the receiving Party may request a reasonable number of duplicate copies identifying particular custodians. For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. For Documents, prior drafts of documents will not be considered duplicates, although the Parties acknowledge that a draft of a document may be responsive while a final copy is not, and vice-versa. The Custodian, FilePath, and EmailFolder will be included (for all available copies of a responsive Electronic Document) in the respective CUSTODIAN(S), FILEPATH(S), and EMAIL_FOLDER(S) fields in the production Load File. In addition, if the email files were collected directly from the Microsoft Exchange server, outlook.ost files may be excluded from processing as duplicative of outlook.pst files unless only the .ost file version is available.

## IV. FORMAT OF PRODUCTION

1. **Non-Redacted ESI Not Produced in Native Form**: Non-redacted ESI should be produced in a form no less "searchable" than it is maintained in the **normal** course of the producing Party's business. ESI will be produced in single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance Load Files (depending on the reasonable preference of the requesting Party), with searchable extracted text of the Document (at the document level in a .TXT file) and the Metadata fields listed in Exhibit A, if applicable

(except that the Parties agree that Metadata fields may be redacted on any basis permissible under the Federal Rules of Civil Procedure, so long as redactions are identified as such). If documents, such as email, are produced, the relationship between related documents (*e.g.*, email attachments) should be preserved. All non-privileged Electronic Documents attached to an email should be produced contemporaneously and sequentially immediately after the parent email.

2. **ESI to be Produced in Native Form**: Non-redacted Excel files, .CSV files, other similar spreadsheet files, presentation (*e.g.*, PowerPoint) files, and audio or video media files, or other similar file formats where an image file does not adequately represent the files as maintained in the ordinary course, shall be produced in their Native Format, including the formulae embedded in the spreadsheet and any Metadata contained in the file. A Party may request a reasonable number of Word documents to be produced in Native form with comments or tracked changes. The producing Party reserves the right to object if the requests become unreasonably onerous. Files produced in Native Format shall be named either with a sequential Bates number followed by the file extension or with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file extension. A placeholder TIFF with language "Document Produced in Native" or similar language shall be included for each native file produced. To the extent native files, including electronic spreadsheets, are redacted, production shall be made in TIFF format in accordance with the "Redacted Documents"-section. To the extent other file formats present specific challenges, the Parties agree to cooperate in good faith to address the format in which those documents should be produced.

3. **Redacted Documents**: For redacted Electronic Documents, the Parties agree to produce as redacted single-page, black and white Group IV TIFF images with Metadata contained in a separate file. If an Electronic Document is produced in redacted form, the same Metadata fields listed in Exhibit A shall be produced for a redacted Electronic Document except that fields may be redacted to the extent that they contain redactable data.

4. **Hard-Copy Documents**: Hard-Copy Documents should be produced as single-page, black and white Group IV TIFF images (300 DPI resolution) with coded data contained in

a separate file. The producing Party shall also provide document-level OCR text files to accompany the TIFF format production. The minimum fields for a scanned Hard-Copy Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN indicating the beginning and ending Bates numbers, attachments ranges of all documents, and the custodian information. Hard-copy documents shall be OCR'ed and the OCR text shall be provided as one .TXT file per document.

5. **Document Unitization for Hard-Copy Documents**: If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments shall be maintained as it existed in the original Document, so that each document will not be split, but instead the pages thereof shall be sequenced and saved together, as they existed in the original. Pages containing affixed notes, such as Post-Its, will be scanned with and without the note, with the image with the note preceding the image without the note.

6. **Databases, Structured and/or Application ESI**: The Parties shall produce responsive ESI from any relevant database, structured and/or application ESI in a reasonably useable production format. The Parties agree to meet and confer regarding the appropriate format(s) for production to enable review by the Parties.

7. **Social Media**: Relevant ESI from social media websites (*e.g.*, LinkedIn, Facebook, Twitter, Instagram) may be produced by capturing responsive information through "screenshots" or "screen captures" and converting the same into images along with corresponding OCR or extracted text, unless the Parties agree to perform bulk exports of accounts, such as by exporting a profile from LinkedIn or downloading a copy of an individual's Facebook data and archive.

8. **Bates Numbering**: Each page of a produced image shall have a unique Bates number electronically "burned" on the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF image or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document

7

image other than confidentiality legends (where applicable) or redactions. The Parties acknowledge that production of multiple documents at once may at times result in a Bates number that obliterates or obscures information, and the Parties agree to work together in good faith to address specific issues as they arise. Bates numbers should also be included within the corresponding OCR or extracted text in the TXT file for each document.

9. **Confidentiality**: Electronic data produced in discovery may be labeled with Confidentiality Designations pursuant to the Protective Order. In the case of TIFF images, confidentiality legends shall be "burned" on the image at a location that does not unreasonably obliterate or obscure any information from the source document. The Parties acknowledge that production of multiple documents at once may at times result in a confidentiality branding that obliterates or obscures information, and the Parties agree to work together in good faith to address specific issues as they arise. For materials produced in Native Format, the producing party shall supply fielded data identifying the confidential treatment of each document designated for confidentiality or shall name the file with the Bates number followed by the Confidentiality Designation and the file extension. Any additional information that is "burned" on the image, such as privilege designations, shall also be identified in a field within the metadata file. A failure to make a designation through fielded data or a naming of the file may be corrected by notifying the other side of the mistaken designations of confidential materials. Furthermore, nothing in this Order is intended to waive the protections set forth in the Protective Order.

10. **No Color**: Documents in color need not be produced in color as a matter of course except where production in color is apparently necessary to fully comprehend the document (*e.g.*, where categories are distinguished by different colors of text). A Party may request that a reasonable number of specifically identified documents (*e.g.*, social media posts) be produced in a color .PDF or .JPG format.

11. **Production Media**: Documents shall be produced on CDs, DVDs, USB hard drives, portable hard drives, or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission. The volume number and Bates number range(s) of the materials shall

be included on the production media label or, where it is not practicable to do so, in an accompanying letter. If a producing party encrypts or "locks" a production, the producing party shall send, under separate correspondence, the password for decrypting the production.

## V. PRIVILEGE AND WORK PRODUCT CLAIMS

1. **Privilege Log**: The Parties recognize that Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege"). The Parties agree that if the following documents are privileged, they need not be included on a privilege log: (a) privileged materials created by or for the Parties' outside counsel as part of the investigation, prosecution, or defense of this case on or after January 31, 2024; (b) internal communications within and between the law firm(s) representing Plaintiff or within the in-house or outside legal team(s) acting in its capacity representing Defendant or those non-attorneys acting at the direction of counsel acting in its capacity as counsel for Defendant on or after January 31, 2024; (c) privileged communications between a Party and their in-house or outside counsel concerning the investigation, preparation, prosecution or defense of this case on or after January 31, 2024; and, (d) material that is protected by the attorney-client privilege or attorney work-product doctrines based on an attorney-client relationship with a non-party on or after January 31, 2024. The Parties believe that, where it is necessary to redact material in category "(d)," it will generally be obvious from the context of the redactions that material in this category has been redacted. While the Parties will make reasonable efforts to identify these redactions, they will not be required to log them on a privilege log. Where material in category "(d)" is withheld from production entirely (*e.g.*, where such material was attached to a responsive, non-privileged email), the Parties agree that a slip-sheet bearing the label "DOCUMENT WITHHELD DUE TO NON-PARTY PRIVILEGE OR WORK PRODUCT" will be produced in the document's place, and no Metadata for that document will be produced.

2. **Clawback Protection**: The productions of hard-copy documents and ESI are subject to the Parties' rights under the Protective Order, the rules and practices of this Court, Fed.

R. Civ. P. 26(b)(5), and Federal Rule of Evidence 502, to request the return of inadvertently produced discovery.

### VI. MISCELLANEOUS

1. **Objections Preserved**: Nothing in this Order shall be interpreted to require disclosure of irrelevant information, information that the Court has ruled is not proportional to the needs of the case, or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of hard-copy documents and ESI.

2. **No Effect on Cost Shifting**: Each Party shall bear its own costs of producing relevant ESI in its possession or control.  This provision does not prohibit any Party from seeking cost-sharing measures in the event that a particular discovery request is overly broad or unduly burdensome, or in the event that the producing Party engages in sanctionable discovery conduct.

3. **Protective Order**: All Documents produced by the Parties will be subject to the terms of the Protective Order, including but not limited to the terms regarding secure storage of Protected Material.

4. **Modification**: This Order may be modified by a written Stipulation of the Parties with approval of this Court or by the Court for good cause shown.

## **EXHIBIT A**

| Field | Definition | Doc |
|---|---|---|
| SOURCE | Name of party producing the document | All |
| CUSTODIAN(S) | Names of person or other data source (non-human) from where documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.).* | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | End Bates Number (production number) | All |
| PGCOUNT | Number of pages in the document | All |
| FILESIZE | File Size | All |
| APPLICAT | Commonly associated application for the specified file type. | All |
| FILEPATH(S) | Original file/path of the locations where the item resided at the time of preservation. This should include location, file name, and file source extension. | All |
| NATIVEFILELINK | File path for documents provided in native format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| FILE NAME | Original file name of the item | All |
| FILETYPE | Application that created the file (*e.g.*, Word, Outlook, Excel, Adobe). | All |
| FILE EXTENSION | Extension of the file (*e.g.*, .docx, .pdf, .xlsx, .msg). | All |
| EMAIL FOLDER(S) | Folder location of the email within the .PST/.OST | Email |
| FROM | Sender | Email |

1

| Field | Definition | Doc |
|---|---|---|
| TO | Recipient | Email |
| CC | Additional Recipients | Email |
| BCC | Blind Additional Recipients | Email |
| SUBJECT | Subject line of email | Email |
| PARENTBATES | BEGBATES number for the parent email of a family (will not be populated for documents that are not part of a family) | Email |
| ATTACHBATES | Bates number from the first page of each attachment | Email |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first page of the parent email) | Email |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) | Email |
| DATESENT (mm/dd/yyyy hh:mm:ss AM/PM) | Date Sent | Email |
| DATERCVD (mm/dd/yyyy hh:mm:ss AM/PM) | Date Received | Email |
| EMAILDATSORT (mm/dd/yyyy hh:mm:ss AM/PM) | Sent Date of the parent email (i.e., physically top email in a chain) | Email |
| HASHVALUE | MD5 hash value (or an alternatively agreed upon hash value) for email, attachments, and electronic documents, computed at the time of processing | All |
| TITLE | Internal document property | Electronic Data |
| AUTHOR | Creator of an Electronic Document | Electronic Data |
| DATECRTD (mm/dd/yyyy hh:mm:ss AM/PM) | Creation Date | Electronic Data |

| Field | Definition | Doc |
|---|---|---|
| LASTMODD (mm/dd/yyyy hh:mm:ss AM/PM) | Last Modified Date | Electronic Data |
| LASTMODBY | Last Modified By | All |
| ProdVol | Name of media that data was produced on | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation | All |
| Privilege | Privilege designations if indicated in the stamping on the face of the document | All |
| TimeZoneProc | Time zone where item was first processed. | All |

DONE AND ORDERED in Chambers at New York, New York, this __26__ day of __March__, 2024.

United States District Judge Jesse M. Furman

Copies furnished to:
All Counsel of Record

3